## LONG v. TEXAS PACIFIC–MISSOURI PACIFIC TERMINAL R. R. OF NEW ORLEANS.
### No. 14545.

Court of Appeal of Louisiana. Orleans.
Feb. 26, 1934.

Cobb & Jones and Herman M. Baginsky, all of New Orleans, for appellant.

Dufour, St. Paul, Levy & Miceli and Norton L. Wisdom, all of New Orleans, for appellee.

JANVIER, Judge.

George W. Long, plaintiff and appellant, brings this suit, alleging that he was a passenger in a truck belonging to the Anheuser-Busch Ice Cream Company when, on the morning of April 13, 1931, it was being driven up South Peters street in this city. He avers that the truck was run into by a baggage car on the rear end of a train owned and operated by the defendant railroad company, and that the said train was backing into the company's station at Thalia street. He charges that the employees of defendant company were negligent in that they failed to properly maintain a flagman at the street crossing to give warning of the approach of the train and in that they failed to sound a bell or a whistle as the train approached. Petitioner avers that the truck was being properly driven at a reasonable speed, and that the collision resulted entirely from the negligence of the employees of the railroad company, as above referred to, and that he himself did not in any way contribute thereto. He seeks recovery in the sum of $2,500.

Defendant railroad company denies all of the allegations of negligence, and particularly charges that the truck was being operated at the time by Long himself, and that the accident resulted entirely from the negligence of the said Long in failing to notice the approach of the train and in failing to heed the "stop" signal which was given by a flagman stationed at the crossing.

Defendant also charges that, if the said Long was, as a matter of fact, a passenger and was not driving the truck, then the negligence of the driver should be imputed to him, since he and the driver were engaged in a joint venture and were fellow employees, and also that, as the said Long was a passenger in the truck, he was himself negligent in not noticing the approach of the train and in not warning the driver of the danger.

In the court below judgment was rendered for defendant, and plaintiff's suit was dismissed.

■ The evidence convinces us that it was Long himself who was driving the automobile truck and not O'Brien, the fellow employee.

The record shows that O'Brien's work had terminated in the early morning, and that a superior officer of O'Brien and Long had instructed Long, who was still on duty, to take the truck and to drive O'Brien to his home. At the time of the accident Long wore a pair of white "unionalls," and O'Brien, his

companion, was attired in a dark suit. A witness who was in the baggage car at the end of the train and who was looking out through the door and saw the truck approaching states that the driver of the truck was attired in white unionalls. This must have been Long.

Immediately after the accident, as O'Brien climbed out of the overturned truck, he was asked by Brown, another witness, how the accident happened, and Brown states that O'Brien answered that Long had been driving the truck. Furthermore, both O'Brien and Long made statements to the city police, and each stated that the truck was being driven by Long. A short time later they both made statements to the claim department of defendant company, and in these statements each said that Long was at the wheel of the truck.

At the trial they both testified it was O'Brien who was driving and not Long, and they both stated that all their earlier statements to the contrary resulted from the fear that it would be discovered that O'Brien had no driver's license and was thus violating the law in operating the truck without a license. We are quite convinced that the statements given by them so shortly after the accident and so thoroughly corroborated by other witnesses were correct, and that, as a matter of fact, it was Long who was at the wheel.

The record leaves no doubt whatever that there was a flagman at the crossing and that he gave a "stop" signal as the truck was approaching the track, but that the two occupants thereof were engaged in conversation and paid no attention, rushing up to the track at a speed too great to permit of the stopping of the truck.

As the automobile approached the track, the view of its occupants in the direction from which the train was approaching became more and more open, so that, when they reached a point 55 feet from the track, they could have seen the train 185 feet away. When they reached a point 30 feet from the track, their view was entirely unobstructed. Both claim that the signal given by the flagman indicated to them that the train would stop and that they would be permitted to pass and that it was only upon noticing this signal that they proceeded.

The evidence convinces us, however, as it did the district court, that the flagman signalled them to stop and that they did not heed his warning, but dashed headlong upon the track just as the train reached the crossing. Under such circumstances, it is manifest that there can be no recovery.

The judgment appealed from is affirmed.

Affirmed.